313-0029 Don Granger, appellant Lonnie Van Ogus v. Harrah's Casino, Jason Whitman, appellee by Frank Haskell, and William Lynch, appellee, Carolyn Shapiro Thank you. Mr. Ogus? Good morning, Your Honor. Good morning. I'm Lonnie Van Ogus. I represent Donald Granger. This matter comes to you on two different rulings by two different judges. First was the pretrial judge who ruled that defendant Lynch had immunity. Second, then we went to trial with one single defendant. I call it one defendant. Harrah's and Glickman were together. If one is guilty, they're both guilty. If one is not, if Mr. Glickman is guilty, Harrah's is guilty. That was stipulated to jury instruction. So they're stuck together. Two sets of defendants. And really the facts in this case are not in dispute. The driver's license that we're talking about was a valid Georgia driver's license of Don Granger. And we also, the fact that it's not in dispute, is at trial, both Mr. Glickman and Mr. Lynch testified under oath they had no probable cause. Now, let's get to Mr. Lynch. Mr. Lynch gets out because he's a state employee, an Illinois gaming agent. Let's talk about what he did and what he knew. Mr. Granger is at the casino playing. He's on a free trip paid for by Harrah's. He's staying at that hotel. His card, his Harrah's seven stars card, is in the machine. You watch the video, it sits there the entire time. Why does he need a card? Because he uses that card because Harrah's can determine how long he plays, how much he wins, how much he loses, what value he plays for, how quickly he pulls the machine. They want to know, they want to reward him. And they have to know that to make sure. So they give him this card and it's sitting in the machine. It's his card, it's his picture, his driver's license, his picture. And it's interesting, of course, that the driver's license, the picture, is of course Mr. Granger. But the information about his height, his weight, his race, his sex, they all match Mr. Granger. Mr. Lynch says that, he admits that. Whatever it says about his height and his weight, it matches. So the incredible part of this is that if Mr. Granger got a phony driver's license or phonied up his driver's license, he'd have to find one that matched him with the printing on it and then put his picture on it. It's absolutely true, not in dispute. Mr. Granger is a federal correctional officer and he wins a $1,400 prize that he has to sign for, for tax purposes. And if you watch that video, Mr. Granger is an absolute gentleman. That's what they testified to during the entire time. He sits there, waits for his jackpot, and waits, and waits, and waits. And when Mr. Lynch comes out and tells him, you're under arrest, no fighting, no nothing. Stands up, puts his hands behind his back, they cuff him and take him off the floor, put him in the back room, handcuff him to the wall where they wait for the police to come. At no point does he argue, fight, anything. Never tries to run away. And it's absolutely true that nobody determined what's going on here. They thought, the only thing they thought, is his neck looked a little funny. That's it. This entire incident occurs, he's handcuffed, he's being taken by the police away, because they thought his neck looked a little funny. It might not be relevant, but did you try this case? Yes. What did you ask the jury for in closing argument? I really can't remember, Judge. Do you remember if it was in like six figures? I'm sure Mr. Kessler will know better than me, but I can't remember, Judge. We asked for a verdict, and we also asked for punitive damages. I can't remember. Did you throw out some numbers? Absolutely. Absolutely, but I don't know what, at this point of this hearing, here it's not quite relevant, so I have forgotten about it. I don't think, I know I didn't ask for a million dollars. He was held for a couple of hours. He felt that he might have to report, he knew he was going to have to report this to his superiors in Georgia. He wondered if he was going to spend the night in jail and be arrested, have to come back. If you watch the video, you'll see all of this, and you'll also see, I think, one of the, it's funny now, but he has to scratch his nose while he's being handcuffed to the wall, and he inches up to the wall, and he scratches it on the wall. What did they determine while he was in any of those rooms, anywhere? Nothing. And Mr. Lynch, at trial, admits he violated state law, and that ends the matter as to Mr., I should say that starts the matter as to Mr. Lynch, because you don't get immunity for violating state law. He didn't act because of his state gaming agent authority. He's a police officer, he's a citizen, and nobody gets that authority. He admitted it. He didn't, he took Mr. Granger, handcuffed him at the scene, took him to the back, handcuffed him to the wall, and that's a violation of state law. Right there. He admitted it. I asked him, flat out. So you violated state law? Yes. What did their briefs tell you their reason for that is, what that means, there is no reason. The brief says, that's a legal question, he's not allowed to admit that. What he admitted was, he's enforced a riverboat gambling act for 12 years, he's worked for the Department of Revenue for 14 more years, he's a licensed state police officer since 1987, he went to the police academy where they teach you what is reasonable suspicion, and if you have enough reasonable suspicion to arrest someone, and procedures for how to do that. That's his quote. They teach you what the laws are, so you know what they are. He was the highest ranking agent on duty. He made the admission, he violated the law, he loses his immunity. No state employee will worry that, gee, Mr. Lynch, who violated the state law, is going to trial, so I better watch what I do. State employees are not supposed to violate the criminal laws of the state of Illinois. Well even so, it's an issue whether, what about the court of claims? We're in the court of claims, we're waiting. We're waiting for this matter to be resolved. We have filed with the court of claims. So that matter is there, but I don't want to be in the court of claims, I want to be in the jury trial. And what Fritz says, Sovereign immunity offers no protection when the state's agent acted in violation of statutory or constitutional law, or in violation or in excess of his authority. And that's exactly what he admitted. The words didn't come from my mouth. Mr. Lynch admitted. The duty not, Fritz again says, the duty not to make false accusations of criminal conduct is imposed by the Illinois Criminal Code, which makes no distinctions between accusations by state employees and non-state employees. That's Fritz, the Illinois Supreme Court. And that's what he admitted. He admitted to a false accusation? Absolutely. And what would that be? That he arrested, he admitted that he arrested Mr. Granger without probable cause. He moved him from this area to that area with handcuffs. That's a violation of the statute. And the statute says, 725 ILCS 5-1-7- Oh, we're familiar with the statute. It says, such detention and temporary questioning will be conducted in the vicinity of where the person was stopped. And so I asked him, so question, so you violated that statute? Answer, yes. Isn't that the birth of the exclusionary rule? In other words, if police, the Supreme Court decided every time a cop makes a mistake and make an arrest without probable cause, it's not a good public policy to have these drawn into court. So we're going to do something else to exclude them, to try to deter that conduct, and we're going to exclude any evidence that's subject to that. In other words, the remedy for arresting somebody without probable cause is to exclude the evidence, not to sue the police. Oh, that's in a civil case. I'm sorry, that's in a criminal case, to exclude the evidence. But in a civil case, if I'm arrested without probable cause, there are thousands of cases of false arrest, which is an arrest without probable cause. That's what Mr. Lynch admits he did. He moved him. He didn't do anything at all. Basically, what he testified to is, I hope the police would figure it out, because I didn't want to figure it out. I didn't figure it out. What did the police figure out? Totally correct. Totally correct license. He says, I was going to let them investigate. That's what he testified to. It was late at night. We couldn't figure it out. We couldn't determine if this was him or not. So let's have the police take him away in handcuffs, and who cares about Mr. Granger's rights? The police will figure it out. If I see some suspicious behavior around my house, and I call the police, and the police arrest somebody without probable cause, you can sue me for criminal police? No. No. The question, the lines are drawn very clearly between different people. First of all, you're allowed to report a belief about a crime. You haven't signed a criminal complaint. You haven't caused the person to be arrested. You've only caused the police to come out and investigate. The police then investigate. And if the police investigate and say, falsely, this person did X, Y, and Z, they're on the hook and not you. If you told the police, I saw this gentleman break in my house and break my window, and the police arrest him, and you didn't, you lied, then the police are off the hook because they relied on you, but you're on the hook because you lied. What's even the allegation that the casino employees lied about, not the trooper that was working for the casino? The casino, Mr. Glickman, he, Mr. Glickman, second defendant, says I didn't do a single investigation. I saw this license. Hmm, I don't know. I'm going to, I'm not going to do anything. And that's the whole matter of the jury instruction to me. The jury instruction says. Is that an investigation before I call the police? Yes. I do? Yes, that's what the case law says. That's what Kincaid v. Ames says. A security guard, he says he was a security person, must do a reasonable, doesn't say what he has to do, just reasonable. Let the jury figure out what reasonable is. Because Mr. Lynch, Mr. Glickman says I did nothing. I could have done all these things. I had a card sitting in that office in the machine. I could have asked Mr. Lynch, Mr. Granger, I'm sorry, 25 different questions. I did nothing. What case says, what case says a citizen has to do a reasonable investigation before he calls the police to report something that he thinks is suspicious? Kincaid v. Ames says that. A security guard says that. That was the exact basis for the jury instruction we asked for. Kincaid v. Ames. That's what we asked for. The judge refused. And that's the only issue of appeal, whether or not that instruction was there. Okay, so let's clarify this, counsel. Okay, we're not talking, you're putting Glickman, right, because he is a private security guard. No. Glickman is a state gaming agent who violated the state law. I'm sorry, I'm sorry. No, you're right. No, I'm right. You're right. I am. Slow off here and get the characters right. Okay, Glickman is a private security guard, an employer here. Okay, isn't he more in the position of reporting, as the example of Justice Smith of the private citizen reporting suspicious activity around his house? He's done more than that. Okay, that's where I want to go. What is it that he has done more than? He's got Mr. Glickman, he's got Mr. Granger's driver's license, he's holding it, and he's got Mr. Granger's $1,400, and he's holding it. Was this unlawful restraint of $1,400 or unlawful restraint of your client? The $1,400 is Mr. Granger's. He's won it. There's no doubt about that. When they refuse to pay it, they're holding his money. But the restraint is of Mr. Granger. What's the tort you're suing for? Him or they're holding his money? The restatement says, and it's in my reply brief very clearly, and when I looked at it, it was like, whoa, it's a specific set of facts. If you hold my money and I can't go because I think I'm not going to get my money, that's a false imprisonment. Oh, come on. That's what the restatement says, and that's exactly what happens. Now let's get back to this. If the plaintiff wins and has won this money, isn't there a time period before reporting one's winnings and receiving them? He is required to sign a form for tax purposes. Once he signs that form, they bring him his money. If you watch the very, very end of the video, when Mr. Granger is brought back from the police department, that's what occurs. Here's the form, sign it, here's your money, goodbye. Not handcuffed, not handcuffed or rolling back. That's going beyond the tail here for this question. Very quickly. My point is, is that just if one says, wait a minute, sir, we have to check some papers before we can turn over those winnings, is that a false imprisonment? No. Why not? Because the question is, it's reasonable. You have to give what… Okay, so the jury was asked, unfortunately, from your standpoint, from your argument, is they weren't asked to look at reasonable grounds. That's correct. Okay, because they were given a probable cause instruction. No, they were given no instruction as to what Mr. Glickman had to do. None. They were told what probable cause reasonable grounds is, but the link was missing as to he has to do that. And what all Mr. Glickman said is Mr. Lynch's fault. That's us doing it. Don't blame me. We want him to be at fault because he didn't pursue reasonable areas of investigation. Okay, so that's really your argument on the jury instruction, is that it's a Glickman-specific instruction, basically. Yes. That's all we're appealing for Mr. Glickman, that single instruction. To answer Your Honor's question, McKinley v. Christie is a false imprisonment, a 1961 case out of the Third District, unlawful exercise by a person which is compelled to remain. That's false arrest. And the false imprisonment from the Restatement of Second Torts, Section 48, Illustration No. 2, A, the owner of a store for the purpose of preventing B, a customer, from leaving the store, but without any privilege to do so, seizes and retains B's purse, which contains a large sum of money. B reasonably believes that he can leave the store only at the risk of losing the purse and the money, and therefore remains in the store. Therefore, A has confined B. They have his money. They have his driver's license. How's he getting home? How's he getting on a plane? How's he living his life? They've got him. He cannot move. And, of course, certainly, when they handcuff him on the casino floor, take him to the back room, he's been imprisoned. Thank you, Your Honor. Mr. Ogis. I think there's some further questions. I'm sorry, Your Honor. I knew my time was up, so I was talking faster. Who actually arrested Mr. Granger? Well, he was never charged, but... Who said you're under arrest for fidelity theft? Mr. Lynch. Mr. Lynch. Okay. Mr. Glickman never came out and talked to Mr. Granger. He handed it over and said, I'm done. It's Lynch's fault, and that's why we need Lynch in this case for the jury trial, so he can't do that. Thank you, Your Honor. Are there any other questions? Ms. Shapiro. Good morning, Your Honors. May it please the Court, I am Illinois Solicitor General Carolyn Shapiro, appearing for Agent William Lynch of the Illinois Gaming Board. The circuit court here had no subject matter jurisdiction over Mr. Granger's claims against Agent Lynch and properly granted summary judgment on grounds of sovereign immunity. And I want to start by addressing something that counsel said about sovereign immunity. He suggested that sovereign immunity does not come into play if the state employee has violated any state law. That's simply untrue. And, in fact, makes no sense. There would be no need for sovereign immunity if it didn't apply when, occasionally, state employees perhaps engage in some wrongdoing. The existence of sovereign immunity presupposes the possibility of a legal wrong by a state employee. So the fact that a state employee is alleged to have violated state law does not, in any way, mean that sovereign immunity does not apply. Furthermore, as Your Honor suggested, it is not the case that Mr. Granger would be without remedy at all. The Court of Claims Act provides for lawsuits against the state, such as this one, and, in fact, he has a case pending in the Court of Claims. But they do limit damages, don't they? Yes, damages are maybe limited. Maybe, yes, but how much is the limit? For a case like this, I can't tell you off the top of my head. Is it $100,000? Yes, and I believe in his complaint, Mr. Granger requested $50,000 in compensatory damages and $50,000 in punitive damages. In excess. I'm sorry? In excess, I believe. In excess, but $50,000 in compensatory damages for the false arrest claim. I also would like to address counsel's suggestion that Mr. Lynch violated some criminal law. The statute that he keeps pointing to is not in the criminal code. It's in the Code of Criminal Procedure, and it describes the way in which investigations and arrests should go forward, but it does not create a crime. It does not define the scope of a crime. It explains how arrests and investigations should occur. So there was not a violation, or he has not alleged a violation of a criminal law here. Sovereign immunity applies when there are three basic tests that are met, and these pieces are overlapping. I'll summarize them quickly, and then I'll talk a little bit about how they apply in this case. First, did he act beyond the scope of his authority, or was Mr. Lynch alleged to act beyond the scope of authority? And again, that's not some allegation of wrongful conduct, because every case involving a question of sovereign immunity involves an allegation of some kind of wrongful conduct. The question is, is that wrongful conduct so far removed from the scope of the state employees' employment that it is beyond the scope of their authority? Second, is the duty something that is not generally owed? And third, was the state employee engaged in normal and official functions of their job? At bottom, all of these point to two primary fundamental principles. One is, was the agent acting in the furtherance of his state employment? Was he doing his job, perhaps allegedly making a mistake, but was he acting in furtherance of his state employment? And second, would liability limit his ability to engage in lawful activities on the part of the state in the future? So would somebody like Agent Lynch be deterred in enforcing the various provisions that he is charged with enforcing under the Illinois Gaming Act, and as an agent of the Illinois Gaming Board? So to speak in a little bit more detail about the prongs at issue here, the factors at issue, was he acting in furtherance of his state employment, or did he act beyond the scope of his authority? Everything he did was within his job as a peace officer enforcing the laws of the state of Illinois. He looked at the driver's license, and he believed that he had probable cause that this was a fraudulent license. Not that Mr. Granger wasn't who he said he was, necessarily, but that the license was fraudulent, which in and of itself, presenting such a fraudulent license is a violation of state law. Second, the duty here that he's alleged to have breached is not a duty that applies to everybody. It applies to police officers and peace officers in their conduct and in their investigations and arrests of individuals. Third, was he engaged in normal and official functions of the state? Of course. That's what he was doing. He was trying to do his job enforcing the criminal laws of the state and of the Illinois Gaming Act. There are no further questions? His powers as a gaming official, his police powers, are restricted to the premises of the gaming facility, are they not? Yes. So that if he walked across the street in a public area... I believe that's correct, yes, but he did not. No, under the facts. So that goes to the first problem. Yes, that he was absolutely acting within the scope of his authority, and to the extent that there was a criminal violation or a possibility of a criminal violation that needed further investigation, he brought in the local authorities who did have the power to proceed. His interaction with Mr. Granger lasted a total of approximately 18 minutes. Thank you, Ms. Shapiro. Thank you. Mr. Cascom? Thank you, Maddox. Good morning. My name is Frank Cascom. I represent Jason Glickman and Harris Casino. The sole issue on this appeal with respect to Harris and Jason Glickman is the propriety of an instruction that was tendered and rejected.  In this instance, it was a proper decision to reject that instruction. But even if the instruction should have been given, Plaintiff would have to show severe prejudice, and there is none. Plaintiff received instructions on probable cause, it was defined, and the jury rendered a decision. But the reason that this was a proper instruction to refuse in the first place is that Mr. Glickman did not arrest the plaintiff. What Mr. Glickman did amounts to a Terry step, an investigatory step, for which probable cause is not required. It's undisputed that it was Mr. Lynch, the IGB agent, who actually effectuated the arrest and decided to place the cuffs upon Mr. Granger and hold him into custody so he could be transported to the Joliet Police Department for further investigation, whether the idea was valid. So what Mr. Glickman did under the facts was the men won $1,400. IGB policy requires Harris to verify ID for anything over $1,200 for tax purposes. The slot host looked at the driver's license and thought it looked funny, called her supervisor who thought it looked funny, who called security, who happened to be Jason Glickman, who also thought it looked funny. And the license is in the record, but what looks funny about it is the neck is significantly larger than the jawline, so it appears as though the face of Mr. Granger has been superimposed on somebody else's license. That's the nature of the irregularity. Was his picture on the card that was in the slot machine? It was. Did they look at it? They did not. Is there a reason for that? Well, in hindsight, it probably would have been the thing to do, but the law does not require that an investigating officer exhaust every possible avenue available. That's not exhausting every possible area. I mean, you've got a card that you've issued that's got his picture on it. It would seem like it would be a no-brainer to say, well, let me look at the picture on the card and see what that looks like. Yes. But you took the case, the case went to the jury, and they made a decision, right? That is correct. But, Justice McDade, to address your point, even if the card in the machine looked okay, it would be a violation of the law if there were an altered license. So going into the machine itself, you would still be confronted with the possibility that one of these IDs is altered. But that's why the law doesn't require the initial responder to be the judge and jury. Under a Terry stop, all there has to be is a reasonable suspicion of criminal activity where there are specific and articulable facts. Those specific and articulable facts were the appearance of the license. And what the Harris people did is bring this to the attention of the IGB, which is the Illinois State Police authoritative arm governing the Riverboat Casinos, which they are required to do. At that point, they have to defer to what the IGB does, and that's what occurred in this case. We're just talking about that. Maybe a very small period of time with the encounter with the plaintiff by a Harris employee. I'm not really concerned. That's another defendant over there. Well, that is why I believe that it was proper to reject the instruction. Because if in that narrow period of time the instruction that was rejected was to have probable cause, security personnel must pursue reasonable avenues of investigation. But you only need probable cause for a proper arrest. You don't need probable cause for a Terry stop. All you have to have is reasonable suspicion. Well, what about the rejected instruction was developed from a particular case? Correct. It's the Kincaid case. What is wrong with that instruction? Nothing is wrong with that instruction except it doesn't apply. That's a different scenario. What the security guard did in Kincaid is different from what Mr. Glickman did here. Explain if you can. The security guard in Kincaid actually detained and placed in some form of custody the defendant until the police arrived. Is that arguably opposing counsel suggests that's what happened to you? It does, but it misses the distinction between a Terry stop and an arrest. What Harris did it was required to do under law is verify that the person claiming to have won the jackpot is the true person for tax purposes. It was unable to do so within the resources available to it. It then turned the investigation over, as it's required, to the IGB. We are talking about a matter of minutes from the time that the slot personnel first raised any level of suspicion to the time it was turned over to Agent Lynch. And for a Terry stop, you need a reasonable, articulable suspicion, not a probable cause. Correct. But it needs to be a reasonable suspicion. It does. Let me ask you, did the plaintiff tell when he was approached by Harris people, did he say, my card's in the machine? He did not. Well, let me say the record doesn't reflect that. He was asked what he said at trial, and I forgot exactly what his answer was, but I don't think that's a specific question to ask. That particular Harris player's card, what information, it has a picture on it? It does. What other identifying information, if any, does it have? I don't recall. I do recall the jury saw it. Okay. It was produced at trial. I'm wondering if it has a dress or, you know, that sort of thing. That may be in the record. Okay. We'll check. I'm sorry, did you try the case? What did the plaintiff ask the jury for? I'm sorry, and I don't know, and I don't recall if it exceeds the court of claims limit. Are there any other questions? So back to that rejected jury instruction, okay, reasonableness, doesn't it articulate what reasonableness is? Well, no, it doesn't. Okay. But the instructions that were given do. All the rejected instruction requested was to have probable cause, security personnel must pursue reasonable avenues of investigation. But what the jury did here is the definition of probable cause, which we did not think was pertinent because we thought it was a terrorist act, and they also got the burden of proof instruction, which is that the defendants caused or procured a restraint to the plaintiff. There was no evidence that Jason Glickman caused or procured the arrest of the plaintiff by Agent Lynch. Agent Lynch testified that once he had the card, he took over the investigation. He didn't rely on anything that Jason Glickman told him. So what Jason Glickman did was have possession of the card for the amount of time he had it, which was in addition to the amount of time that the thought host had it and the thought supervisor had it until he was called, until he turned it over to Jason Glickman. So you're casting the actions of your clients as analogous to the actions Justice Smith suggested of a homeowner calling the police. Exactly right. Any other questions? Thank you, Mr. Kasman. Thank you. To answer a couple of questions, it's Mr. Glickman that started the ball rolling here. He's responsible for everything that occurs after that tortfeasor. So once he takes that license and doesn't give it back, and once he holds on to that money, he's responsible. Counsels, again, talk about this probable cause issue. But Mr. Lynch admitted at page 230, 231 of the trial that he merely had suspicion, which does not equal probable cause. Wait a minute. Lynch is the trooper. That's right. But counsel said in her argument that he had reasonable grounds. He never said that. He had suspicion, which is not. Counsel's not representing the trooper. She is representing the trooper. Okay. She's the one who said that. But we're talking there about sovereign immunity. That's right. And you don't need sovereign immunity for people. You don't sue people who didn't do anything wrong. Sovereign immunity is only relevant in cases where you're saying somebody made a boo-boo. That's right. And then you sue them. That's right. And so you're saying, well, you can't have sovereign immunity because this trooper violated the law. No, what I'm saying is that's what sovereign immunity is for, is it not? It's to protect state employees from not doing their job properly and to not to send a message to other state employees. However, what Fritz very clearly says and Curry very clearly says on both of those issues is when it can't be – Fritz, when you don't do lawful actions on behalf of the state, your liability should not preclude or chill state employees from engaging in lawful conduct, and sovereign immunity does not apply. I don't know who wrote that. It's the Illinois Supreme Court, Fritz. Sovereign immunity by its nature applies when there's an allegation that a state employee committed some kind of tort. And that's the only time it applies. That's correct. But it doesn't apply to all torts committed by state's employees. If you act – if the case law is very clear, such as – is it Reiniger? When you were a mental health professional and you did something which you did because – which violated the duties of that type of a mental health professional, the fact that you were employed by the state doesn't give you immunity. The question in Fritz and all the cases, does your duty solely – and that's the key word – solely arise because of your state employment? And the answer in this question for Mr. Lynch is absolutely not. Counsel also said that Mr. Lynch had 18 minutes with Don Granger, and that's the issue. That's irrelevant. If I have a car accident, when I run a light and I hit your car, that's one second. I may cause you 50 years' worth of damages for that one second. Eighteen minutes is irrelevant. The question is, what did they do to Mr. Granger while they were walking away and doing whatever else they did? Your Honor asked Mr. Kasbaum about this. The prejudice to the plaintiff was that not a single jury instruction, now that Mr. Lynch was gone and Mr. Glickman is standing here all by himself as a defendant, and he was blaming Mr. Lynch, if you read the arguments, no jury instruction said he has to do anything. And that's what Kincaid v. Ames says. He has to pursue reasonable areas of investigation, not a homeowner, security personnel. And what the facts are in Kincaid is different than what the facts are here. In every case, of course, they're the same. But the duty by a security guard is the same. That's where the instruction comes from. The counsel doesn't tell you that the instruction is wrong or that it misstates the law. And he can't point to any single other instruction which tells you what Glickman had to do. Now, the instruction wouldn't mean that Mr. Glickman would lose. The jury would still have to determine, was it reasonable? But they weren't allowed to make that. They weren't allowed to talk about that. Let's talk about the instruction that they were given, okay, that they're saying it's sufficient. Well, I don't even know if they're saying that because they're saying it's a terri-stop. How does Kincaid do a terri-stop? A terri-stop is by a police official. He's not a police official. He doesn't get to do a terri-stop. Correct. But they were given a probable cause instruction. They were told what probable cause was. But that doesn't tell them how you get the probable cause. And Mr. Glickman admitted he didn't have probable cause. If you read the testimony, I asked him flat out. How about when we read the testimony as opposed to this? I'm sorry, Your Honor. I apologize, Your Honor. If you re-read the testimony. Thanks. He testified. I asked him, did you have probable cause then when I stopped him? Did you ever have probable cause? No. He couldn't care less. I got this big man, big black man, who's there, and we're going to do, we're going to take his license. How could this, you talked about, the counsel talked about the license being, these other pictures. The license was forged. If every picture that he showed, and the record does show, the record is clear, that Mr. Granger tried to show them his work ID, which had his picture. That's number two. They didn't want to look at it. He pulls it out. They don't want to look at it. Number three, his player's card with his picture, and the record is clear that his name is pictured on that card, so it's a Harris card. Harris could go in that database and find out everything they want to know about Mr. Granger. That's Harris. That's Mr. Glickman. Nothing. And if all three of them are forged, how does, if all three of them are good and they all match, or they all match, how does he possibly get a driver's license that's not his, apparently, that matches his age and race and sex and height and weight? Impossible. Would it be fair to say that you made all these arguments to the jury? Absolutely would be fair. And how did it go? It went that way because a jury instruction was missing. That's the only reason it went that way. That's the only reason I'm arguing. That instruction. Yes, that's the only reason I've argued as to Mr. Glickman. The jury, based on the evidence, the jury could have found, based on the evidence and the instruction, the jury could have found what it did. Absolutely. With that instruction, that was prejudiced because no other instruction told them what Mr. Glickman had to do. So you're saying it was missing a duty instruction. Absolutely. And the instruction did not fairly and correctly give them the entire law, and that's when a trial court needs to be reversed, and that's when instruction needs to be given. And there's only one issue. It's a simple instruction. It's one sentence. And nothing, nothing, no other instruction told them that. And if you read Mr. Kesbaum's closing argument, that was his entire argument. Thank you. Thank you, Mr. Ogis. We thank both of you, all three of you, excuse me, for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court now stands in brief recess for a panel change.